IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-3024-JLK

DERICK FINN,

       Plaintiff,

v.

SUNCOR ENERGY a/k/a Suncor Energy USA, Inc.,

       Defendant.

_____

ORDER
_____

KANE, J.

       After Defendant Suncor terminated his employment, Plaintiff Derick Finn filed suit,

alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981, and the

Colorado Anti-Discrimination Act for discrimination and retaliation. 42 U.S.C. §2000e *et seq.*;

42 U.S.C. §1981; C.R.S. 24-34-402. Finn claims his former supervisor, Jennifer Fowler,

discriminated against him based on his race and ethnicity. Finn also claims Fowler retaliated

against him for reporting the discriminatory behavior. The matter is before me on Suncor's

Motion for Summary Judgment.   Having carefully reviewed the evidentiary submissions of both

parties, I conclude Suncor's Motion must be GRANTED with regard to Plaintiff's retaliation

claim and DENIED in all other respects.

LEGAL STANDARD

       Summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure is

appropriate if the movant can show there is no genuine dispute of material fact between the

parties and that the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242 (1986); *Adamson v. Multi Community Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008); *Aman v. Dillon Cos.*, 2014 U.S. Dist. LEXIS 31263 (D. Colo. Mar. 11, 2014); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it could affect the case's outcome, and a dispute over material fact is genuine only if a rational jury could find for the nonmoving party based on the evidence presented. *Anderson* 477 U.S. at 248; *see also Adamson* 514 F.3d. The facts are to be viewed in a light most favorable to the non-moving party. *See Anderson* 477 U.S.; *Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002). The moving party can defeat an adverse party's claim of a genuine factual dispute by showing that the nonmoving party is unable to produce admissible evidence that supports his claim. Fed. R. Civ. P. 56(c)(1); *see Mackenzie v. City and County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005); *Aman* 2014 U.S. Dist. LEXIS 31263.

BACKGROUND

The following facts are either undisputed or taken as true, viewing the record in the light most favorable to Plaintiff.

Suncor Energy hired Derick Finn, a Hispanic male, in February of 2006 as an at-will employee with the title of warehouse manager. As warehouse manager, he was responsible for receiving, maintaining, and distributing warehouse inventory.

Suncor uses a database called SAP to maintain inventory records. Finn was responsible for making sure the inventory shown in the SAP database accurately represented the warehouse's inventory. He was also responsible for ensuring the locations indicated in SAP matched the parts' true locations within the warehouse. Suncor warehouses use a system called cycle counting to ensure SAP accuracy. Cycle counting is a process of physically counting inventory one section at a time, rather than closing down the warehouse to count the entire inventory at

once. Finn and Fowler discussed the importance of cycle counting on multiple occasions, and Fowler instructed Finn to develop a written cycle count process for the warehouse. Finn never finalized this written process, but he claims a process was in place. Pl.'s Dep. 108:20-109:16. Suncor published a company-wide written process in January, 2011. *See* Suncor Cycle Counting Procedure (Doc. 38-12). The amount of cycle counting in Finn's warehouse varied greatly throughout his employment. In 2009 and the first part of 2010, Finn maintains that his warehouse ranked number one in cycle counting among all Suncor warehouses in the U.S., but he admits there was no cycle counting at all May through August of 2010. Pl.'s Dep. 157: 4-18; 162:19-163:3.

Finn was responsible for identifying and disposing of obsolete inventory. Pl.'s Dep. 65: 22-25; 139:18-140:3. In 2009, he identified approximately $700,000 worth of obsolete inventory. Pl.'s Dep. 138: 5-6. This inventory was not disposed of, but Finn contends he was unable to secure timely permission from management to dispose of the inventory. Pl.'s Dep. 139:3-12.

The parts within the warehouses are composed of different metallurgies. Both parties agree it is important to keep track of these differences, because using a part at a heat for which it is not designed could be disastrous. Parts that enter the warehouse are supposed to be scanned with radio-frequency (RF) guns. SAP then alerts the warehouse employees when the metallurgy of an incoming part must be verified. This process can also be completed manually by an employee entering the new part number into SAP at a computer. Both parties agree that the RF gun usage was inconsistent and below the goals set by Fowler, but Finn contends that entering the parts manually into SAP is equally safe and effective. *Id.* at 47:11-13; 49:1-2; 56:2-9. He also claims that the low RF gun usage was directly due to Fowler's failure to involve him in

warehouse decision-making. Pl.'s Affidavit (Doc. 38-1) ¶31(g). The record does not indicate that any accidents related to misidentified metallurgies occurred during Mr. Finn's employment.

Finn was also responsible for receiving and distributing inventory in the warehouse. This included inventory that was delivered straight to job sites instead of to the warehouse itself. Both parties agree that a process for receiving off site inventory was important, but disagree as to whether Finn put such a process in place. Finn claims he did develop a process, and Fowler neglected to respond to his requests for approval. *Id.* at ¶50.

From 2006 through 2009, Finn received only favorable performance reviews and full bonus potential for his position. By November, 2009, Jennifer Fowler had become head of Supply Chain Management, making her Finn's supervisor. Fowler also supervised Tony Murphy, a white male employee. Murphy's job title is "plan, schedule, and coordinate" (PSC) lead, a title different from Finn's title of warehouse leader or manager, but they both reported to Fowler and were involved in SCM. Their positions were also at an equal level on the company's organizational chart.

Fowler completed her first performance review of Finn in February, 2010, after acting as his supervisor for approximately four months. Finn's previous supervisor had input on this performance review as well. Finn received a rating of "successfully meets expectations," but Fowler made multiple comments within the review that he needed to improve his writing skills and the specificity of his goals. *See* Finn Perf. Rev. 2009 (Doc. 35-12).

In an email dated February 24th, Fowler discussed Finn's potential termination and the possible use of a short-term performance plan as a tool to avoid any problems that could arise from terminating him. *See* Fowler Email to Phillips and Bean (Doc. 38-3).

In November, 2010, Finn had a meeting with Fowler and Deborah Lee, a senior Human Resources advisor for Suncor. Fowler told Finn that his job performance was lacking. Finn contends he was caught off guard by this, having heard no complaints during the first ten months of 2010. Pl.'s Affidavit ¶16.

On February 8th, 2011, Suncor presented Finn with a $100 gift card and award for perfect attendance in 2010. Finn Awards (Doc. 38-2) p. 2. He had received other similar awards in previous years as a Suncor Employee. *Id.* at pp. 2-5. At some point in 2011, the Suncor Refinery Leadership Team gave Finn a $500 gift card and an award for his "extra efforts and dedication during the 2011 Turnaround." *See* Finn Awards p. 1. The Turnaround refers to a refinery plant turnaround project. Pl.'s Answer to Mot. Summ. J. p. 15.

In February, 2011, Finn met with Fowler to discuss his 2010 Performance Evaluation. Sarah Boerger, an HR advisor, also attended the meeting. Together they discussed Finn's failure to meet Fowler's expectations in various areas, including cycle counting, staging and kitting, and root cause analyses. This performance review was Finn's first rating of "does not meet expectations" in a performance review during his employment at Suncor.

Joined by Boerger from HR, Finn and Fowler met again on February 17, 2011, and Finn received a Performance Improvement Plan (PIP). *See* Copy of PIP (Doc. 35-14). The PIP contained goals for Finn, including improving root cause analyses, completing special projects on a timely basis, and proactively addressing all warehouse issues. *Id.* at p. 1. The document also stated that if Finn did not meet these expectations by April 30, 2011, Suncor would reassess his employment. *Id.* at p. 2. The poor performance review and subsequent PIP made Finn ineligible for his annual raise and bonus. After placing Finn on the PIP, Fowler required one-on-one weekly meetings with Finn. She also required Finn move from his office near the warehouse to

an office near her own. Finn contends it was after this meeting and his placement on the PIP that he first began complaining of discrimination by Fowler. Pl.'s Dep. 183:8-17.

On February 23, 2011, Finn emailed Boerger and Conover requesting a meeting with HR and stating he did not "feel like I am being managed to the same level as other employees here in SCM." Finn Email to Conover and Boerger (Doc. 35-17). A meeting did occur.

On March 21, 2011, Finn forwarded an email thread between himself and Fowler to Boerger and Conover, along with a message that he "believe[s] that theses [sic] kind of email reaffirms my statement of discrimination, and harassment by Jennifer [Fowler]." Finn Email to Conover and Boerger (Doc. 35-16) p. 1. This email was Finn's first documented use of the word "discrimination" when describing his treatment by Fowler. In an email to Boerger dated March 28, 2011, Finn stated that his issues with Fowler were due to a personality conflict and that Fowler was treating him differently from other employees. Finn Email to Boerger (Doc. 35-18). He also expressed his frustration that HR was not responding to his requests for an investigation. *Id.*

On May 24, 2011, Fowler took Finn off of the PIP, citing the significant improvements Finn had made towards implementing the plan. *See* Fowler Email to Bean (Doc. 35-28) p. 2. Fowler requested Finn receive a 3% raise as a reward for his improvement. *Id.*

On that same day, Fowler emailed Boerger and Conover in HR informing them of Finn's removal from the PIP. In that email, Fowler stated that Finn told her he had retained counsel and was considering filing an Equal Employee Opportunity claim. Fowler Email to Bean, Conover, Boerger (Doc. 35-29).

In August, 2011, Fowler told Finn his employment was at risk at his mid-year performance evaluation. *See* Fowler Meeting Talking Points (Doc. 35-31). Fowler told Finn that

he had not continued to improve his performance since she had removed him from the performance plan in May. *Id.* Finn maintains that after this August meeting, Fowler began distancing herself and excluding Finn from important decisions, which affected his job performance. Pl.'s Affidavit ¶28.

On December 13th, 2011, Suncor terminated Finn's employment. His replacement is a white male named Tony Gibbons. Finn filed suit against Suncor on October 18th, 2012.

DISCUSSION

Finn's complaint comprises two claims: discrimination based on race/ethnicity and retaliation. These claims, if proven true, would violate 42 U.S.C. §1981 and Title VII of the Civil Rights Act of 1964. 42 U.S.C. §2000e *et. seq.*

## I.    Claim I – Discrimination on the basis of race/ethnicity

Finn claims that discrimination on the basis of race and ethnicity was the motivating factor for the termination of his employment at Suncor. When discrimination is alleged without direct evidence, the burden shifting framework introduced in *McDonnell Douglas Corp. v. Green* is the appropriate analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (U.S. 1973). The plaintiff must first establish a prima facie case of discrimination. *Id.*

In order to establish a prima facie case of discrimination, the plaintiff must prove, by a preponderance of the evidence, that he is a member of a protected class, has suffered adverse employment action, was qualified for the position at issue, and was treated less favorably than those similarly situated and not in the protected class. *McDonnell Douglas Corp.* 411 U.S. at 802; *see also Crowe v. ADT Sec. Servs.*, 649 F.3d 1189 (10th Cir. Colo. 2011); *Aman v. Dillon Cos.*, 2014 U.S. Dist. LEXIS 31263 (D. Colo. Mar. 11, 2014). The Tenth Circuit has held that to be similarly situated, employees must have the same supervisor and be subject to the same

performance evaluation and disciplinary standards. *Sampson v. Integra Telecom Holdings, Inc.*, 461 Fed. Appx. 670, 673 (10th Cir. 2012).

If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant employer to produce a legitimate non-discriminatory reason for the adverse action against the plaintiff. *Crowe* 649 F.3d at 1195. If the defendant succeeds, the burden of production and persuasion returns to the plaintiff who must prove his protected status was a determinative factor in the defendant's action, or that the defendant's explanation is pretextual. *Id.*

Defendant Suncor does not dispute the fact that Finn meets the first two requirements for a prima facie case of discrimination on the basis of race; he is Hispanic and was placed on a performance plan and then terminated from his job. Pl.'s Answer to Mot. Summ. J. p. 26. Regarding Mr. Finn's qualification for his position, Suncor contends he was not qualified based on his consistent failure to achieve the goals set for him by Fowler, his inconsistent cycle counting and RF gun usage, and his failure to continue to improve after being removed from the PIP. Mot. Summ. J. pp. 6-14. Finn counters by pointing out the multiple awards he received during his employment at Suncor, his previous positive performance reviews, and his success at his job before Fowler's arrival at the company. Pl.'s Answer to Mot. Summ. J. pp. 1, 6, 28. With the evidence viewed in the light most favorable to Mr. Finn, he satisfies this requirement.

Finn claims that Tony Murphy was a similarly situated employee, and that Fowler treated the two men differently.  Pl.'s Complaint ¶11. The two men had different titles and responsibilities within the company, but they also had many shared responsibilities, the same supervisor, and were at the same level within the company's organizational chart. Fowler Dep. 46:6-10; 47:4-48:6. Finn easily satisfies the Tenth Circuit requirement that the employees have

the same supervisor; both he and Murphy reported directly to Fowler. Fowler Dep. 46:6-10. There is conflicting evidence as to whether they were subject to the same standards, but viewing the evidence in the light most favorable to the plaintiff, a reasonable factfinder could find that Finn and Murphy were similarly situated employees.

Finn provides little evidence that Fowler treated him and Murphy differently, but it is sufficient to defeat summary judgment. Finn stated that he observed Fowler giving Murphy direction, while she refused to do the same for Finn. Pl.'s Dep. 200:21-24. Fowler also forced Finn to move to an office next to hers and attend weekly one-on-one meetings. Pl.'s Complaint ¶11. Suncor claims Fowler also had one-on-one meetings with Murphy, but Murphy was not forced to move offices, and there is no evidence that his meetings with Fowler were required weekly. Mot. Summ. J. ¶¶ 69-71. Looking at the evidence in a light most favorable to Finn, a reasonable jury could find that he was treated differently than his similarly situated counterpart.

If Finn can establish a prima facie case of employment discrimination on the basis of race, the burden then shifts to Defendant Suncor to present a legitimate non-discriminatory reason for the adverse action experienced by the Plaintiff. *Crowe* 649 F.3d at 1195. Suncor can easily point to Finn's failure to achieve the goals set by Fowler as a non-discriminatory reason for both the PIP and Finn's eventual termination. *See* Fowler Decl. ¶¶ 5, 7, 10, 14.

Finn can only continue with his discrimination complaint if he can show that Suncor's proffered explanation for his performance plan and subsequent termination is pretextual or that racial discrimination was a motivating factor in the decision. *Crowe* 649 F.3d at 1195. Finn does not present strong evidence that Fowler's conduct towards him was motivated by racial discrimination, but the pretext argument is plausible.

## II.     The Pretext Argument

Finn argues that Fowler's proffered reason for terminating his employment was pretext. The Supreme Court has held that a jury may "reasonably infer from the falsity of [an] explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147 (2000). Citing the *Reeves* case, the Tenth Circuit held that summary judgment for a defendant employer was not appropriate when the plaintiff employee could provide evidence that his employer's stated reasons for his termination were false and that the metrics used to evaluate the employee before his termination were unfair. *Zuniga v. Boeing Co.*, 133 Fed. Appx. 570 (10th Cir. 2005).

In 2006, The Tenth Circuit overturned a district court's grant of summary judgment for the defendant employer, holding that an employment discrimination case should go to trial if there are "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476 (10th Cir. 2006) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). In that case the employee, a black male, was fired for insubordination after failing to show up for work. *BCI Coca-Cola Bottling Co.* 450 F.3d at 481. The employee had allegedly been excused from work due to illness by a supervisor, and a different supervisor with a history of unequal treatment towards black employees had reported the plaintiff's failure to show up to Human Resources. *Id.* The court held that a reasonable jury could choose to believe the plaintiff's testimony and the

testimony of the supervisor who excused the plaintiff from work over that of the reporting supervisor. *Id.* at 492.

Finn asserts that Fowler's proffered explanation for his termination – his failure to perform his job to the standards set by management – is false. Accordingly, a jury could reasonably infer that the false explanation is being used to cover up discrimination. *See Reeves* 530 U.S. at 147. Finn's struggle will be proving Fowler's explanation is false. Both parties agree that Finn did not accomplish all of the goals that Fowler asked of him. *See* Mot. Summ. J. ¶¶ 20, 21, 26; Pl.'s Dep. 141:2-6; 145:3-14; 150:1-9. Finn asserts, however, that Fowler always intended to fire him, regardless of his performance in 2010 and 2011. He also argues that Fowler's metrics for evaluating his performance were unfair, and he won awards from other sectors of the company during the time Fowler says he was underperforming. The inferences here presented require a trial.

### III.    Claim II – Retaliation

Finn claims Suncor retaliated against him for the steps he took to oppose the discriminatory behavior he experienced from Fowler during his employment. Pl.'s Complaint ¶¶ 17, 18. In order to establish a prima facie case of retaliation under Title VII of the Civil Rights Act of 1964, the plaintiff must show he engaged in protected opposition to discrimination, a reasonable employee would have found the allegedly retaliatory action adverse, and a causal relationship between the protected activity and the alleged retaliation. *See Somoza v. University of Denver*, 513 F.3d 1206 (10th Cir. 2008). The employee must make it clear that the complaint is about discrimination based on race or another protected category, not just general harassment, for the complaint to qualify as protected opposition. *Anderson v. Academy School Dist. 20*, 122 Fed. Appx. 912, 916 (10th Cir. 2004). The Supreme Court has recently held that an employee's

protected opposition to unlawful treatment by an employer must be the but-for cause of the adverse retaliatory action for a retaliation claim to succeed. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013). The Tenth Circuit has indicated that the temporal relationship between the protected opposition and the adverse employment action must be close. *See Haynes v. Level 3 Communications Inc.*, 456 F.3d 1215, 1228 (10th Cir. 2006); *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). A period of three months or longer will not be a sufficiently close temporal relationship to infer causality without other evidence. *Anderson* 181 F.3d at 1179.

Finn claims that his alleged complaints to HR in August of 2010 about Fowler's conduct constitute protected opposition to discrimination, and that his subsequent placement on a performance improvement plan was a retaliatory action taken against him by Fowler. Pl.'s Complaint ¶10. In his deposition, however, he admits that he first complained about Fowler's discrimination against him in March of 2011. Pl.'s Dep. 260:15-17. There is no evidence in the record supporting Finn's claim that he began complaining of discrimination in 2010, so Finn cannot establish a prima facie case alleging that the Performance Improvement Plan he was subjected to beginning in February of 2011 constituted retaliatory action for his complaints to HR in August of 2010. Finn cannot show that any action taken against him before his first documented complaint of discrimination in March of 2011 constituted retaliation.

Finn also claims that his treatment by Fowler after his first complaint of discrimination and eventual termination from Suncor were retaliatory actions. Pl.'s Complaint ¶17. This claim is more viable, since he did complain to HR about discrimination prior to the adverse actions. Finn's complaint must have been about racial discrimination, not just general harassment, to qualify as protected opposition. *Anderson* 122 Fed. Appx. at 916. Finn presents no evidence that

any of his complaints included allegations of discrimination on the basis of race. He even stated

that his issues with Fowler were the result of a personality conflict. *See* Finn Email to Boerger

(Doc. 35-18).

Finn's claim of retaliation cannot survive. He cannot establish a prima facie case of

retaliation. His complaints to HR were not clearly about racial discrimination. He was placed on

the performance plan before his first documented complaint, so the plan was not a retaliatory

action taken against him. His termination occurred over eight months after his first documented

complaint to HR, which fails to meet the Tenth Circuit's close temporal requirement. The

allegation that Fowler planned from the beginning to terminate him actually undermines his

retaliation claim in this context.  *See* Fowler Email to Phillips (Doc. 38-3). Finn cannot show,

even with all evidence viewed in his favor, that any of the adverse employment actions he

suffered were motivated by retaliatory intent, much less that retaliation was the *sine qua non* of

his termination.

CONCLUSION

Summary judgment for Defendant Suncor is granted for the retaliation claim and denied

for the discrimination claim. The case centers on the pretext argument. Finn had no trouble doing

his job until Fowler became his supervisor. She wanted him gone almost as soon as she began

working with him. Her frustrating management style is not grounds for an employment

discrimination suit, but her explanation for terminating Finn, if pretextual, could be. As the

Eleventh Circuit has said, an "employer may fire an employee for good reason, bad reason,

reason based on erroneous facts, or for no reason at all, as long its action is not for a

discriminatory reason." *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th

Cir. 1984). It is not the job of the court to interfere with the business judgment of companies, so

long as that judgment is made in good faith and is not discriminatory. It is also not the job of the court, however, to weigh evidence and act as factfinder when considering a motion for summary judgment. *Zuniga* 133 Fed. Appx. at 574. These questions are, in my view, appropriately answered not by a trial judge on summary judgment, but by a jury whose primary function is to make determinations about parties' conduct based on objective standards. *See generally*, Arthur R. Miller, *The Pretrial Rush to Judgment: Are the "Litigation Explosion," "Liability Crisis," and Efficiency Clichés Eroding our Day in Court and Jury Trial Commitments?* 78 N.Y.U. L. REV. 982, 1132 (2003).[1] In Professor Miller's words, the consideration of objective standards of "human behavior, reasonableness, and state of mind [are] matters historically considered at the core province of jurors," and in this case it will be up to the jury to determine whether Fowler's actions towards Finn were motivated by discriminatory animus.

Dated July 3, 2014.                                 BY THE COURT:

                                                   *s/John L. Kane*
                                                   SENIOR U.S. DISTRICT JUDGE

---

[1] Professor Miller's evocative article provides one of the best-reasoned and exhaustive considerations of Rule 56 and the litigation practices that have surrounded it since the Supreme Court issued its 1986 *Matsushita* trilogy governing the application of Rule 56 and is recommended.